UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **CHERYL LEE** | **CASE NO. 2:22-CV-00174** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **BOYD RACING L L C ET AL** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM RULING

Before the Court is a "Motion for Summary Judgment" (Doc. 71) filed by defendant Schindler Elevator Corporation ("Schindler") to dismiss all claims for defense and indemnity asserted against it by Plaintiff-in-crossclaim, Boyd Racing, LLC d/b/a Delta Downs Racetrack, Casino and Hotel ("Boyd").

## BACKGROUND

This lawsuit involves an incident that allegedly occurred on passenger elevator no. 4 (the "Elevator") at the Delta Downs Racetrack Casino and Hotel. The Elevator was inspected and maintained by Defendant, Schindler Elevator Corporation ("Schindler"). Plaintiff, Cheryl Lee, alleges that on October 5, 2020, she attempted to use the Elevator to travel from the fifth floor to the first floor, when "the elevator malfunctioned, abruptly dropped and abruptly stopped, then continued to drop and stop abruptly." Lee did not fall, was not violently thrown against the Elevator's walls and she did not drop anything.[1]

---

[1] Defendant's exhibit E, p. 47-48; Defendant's exhibit F, Declaration of John "Scott" Thompson, Defendant's exhibit F-1, manual attachment.

Both Defendants, Schindler and Boyd filed a Motion for Summary Judgment.[2] This Court found no fault with Schindler or Delta Downs, dismissing them both with prejudice.[3] In its cross-claim, Boyd contends that Schindler owes it defense and indemnity pursuant to the parties' 2018 Elevator/Escalator Preventative Maintenance Agreement and Specifications (the "Agreement"). Here, Schindler contends that the Louisiana Construction Contract Anti-Indemnity Act (the "Act") voids its defense and indemnity obligations under the contract. Boyd maintains that the Act does not apply.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State*

---

[2] Docs. 44 and 45.
[3] Docs. 65 and 66.

*Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

Schindler paid for insurance covering any indemnity and/or additional insured obligations claimed by Boyd pursuant to the Agreement.[4] Section KK of the Agreement states:

> KK. Indemnification and Insurance:
>
> 1. **CONTRACTOR** [Schindler] **agrees to indemnify, defend and hold the OWNER** and Boyd (as defined below) **harmless** for any and all demands, payments, damages, costs, expenses claims, causes of action, suits, losses, injuries, expenses, or liabilities, whatsoever, whether potential or actual (including, without limitation, reasonable attorney fees and costs) due to personal injury and/or property damage arising from caused by or alleged to be caused by (1) any negligent act or omission (or potential negligent act or omission) of the Contractor, its employees, agents and subcontractors during the performance of or after completion of the services under this Agreement,

---

[4] See Doc. 13, ¶ 10; Delta Downs' exhibit, Doc. 17.

(2) breach of this Agreement; (3) improper operation of the elevator, or (4) a dangerous condition relating to the elevator

\* \* \*

4. Notwithstanding anything contained in this Section to the contrary, **Contractor's obligations to defend OWNER and Boyd,** including the payment of attorneys' fees and costs, shall apply *regardless of any contributing fault or negligence of Owner* and regardless of any allegation or finding of lack of proximate causation; provided, however, if a court of competent jurisdiction ultimately determines that the claim subject to such defense obligation was a result of the sole or contributing negligence of Owner, Contractor shall be entitled to recover the percentage of such verified expenses actually incurred in relation to such defense that is equal to the percentage of fault attributed to Owner by such court.[5]

Additionally, the Agreement provides that:

[n]otwithstanding anything contained in this Section to the contrary, Contractor's obligations shall not be effected or excuses by any contributing fault or negligence of Owner, nor shall the eventual finding of a lack of causation against Contractor have any effect on the obligation of Contractor to defend Owner (and Boyd), including the payment of attorneys' fees and costs, against claims made where causes of action for liability and/or negligence, potential or otherwise, are made against Contractor. While Contractor shall not be required to indemnify Owner for that portion of any claims, loss or injury arising directly from Owner's negligent actions or omissions, this shall not be interpreted to bar or prevent the defense and/or indemnification provisions in favor of Owner (and Boyd) stated herein above.[6]

Schindler argues that the indemnity language in the Agreement runs afoul of the Act and requests that the Court strike that portion of the Agreement and dismiss Delta's cross-claim against it. Schindler remarks that the Act voids any provision in any agreement that

---

[5] (Exhibit "1-A," §KK(4), Doc. 76-1, attached to Delta Downs exhibit 1) (emphasis added).

[6] *Id.* § LL.

purports to indemnify an indemnitee for its own fault. Therefore, the defense and indemnity provision is void.

In this case, both Schindler and Boyd were found to not be at fault, and Boyd is seeking defense costs from Schindler under the defense and indemnity provision. Schindler relies on Louisiana Civil Code Article 2324 which provides as follows:

> A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
>
> B. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor should not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person. . . .

Schindler argues that because of the structure of Louisiana's tort damages law, Boyd would never pay damages for anything Schindler did or did not do, and any defense by Boyd would be because of its own actions or inactions. Schindler remarks that Schindler was not at fault, thus Boyd could not have paid any attorney fees because of the joint or contributing negligence of Schindler.

The Act provides that:

> Notwithstanding any provision of law to the contrary and except as otherwise provided in this Section, any provision, clause, covenant, or agreement contained in, collateral to, or affecting a … construction contract which purports to indemnify, defend, or hold harmless, or has the effect of indemnifying, defending, or holding harmless, the indemnitee from or against any liability for loss or damage resulting from the negligence or intentional acts or omissions of the indemnitee, an agent or employee of the indemnitee, or a third party over which the indemnitor has no control is contrary to the public policy of this state and is null, void, and unenforceable.

Louisiana Revised Statute § 9:2780.1(B).

An indemnity agreement is a special form of contract that is distinguishable from an insurance policy, in that an insurer's duty to defend arises when the pleadings allege a possibility of liability, and a cause of action under a liability insurance policy accrues when the liability attaches. *Id.* An indemnitor does not become liable until the indemnitee actually makes payment or sustains loss. *Meloy v. Conoco*, 504 So.2d 833, 839 (La. 4/6/1987) (citations omitted). As such, the allegations in the complaint against the indemnitee are irrelevant to the indemnitor's obligation to pay; instead, the terms of the indemnity agreement govern the obligations of the parties. *Thomas Riggio v. Ports America Louisiana, L.L.C.*, 2024 WL 4986530, at *4 (La. App. 4 Cir. 12/5/24) (quoting *Meloy*, 504 So.2d at 839).

In *Meloy*, discussing Louisiana's Oilfield Anti-Indemnity act ("LOAIA"), Louisiana Revised Statute 9:2780, the court held that the LOAIA only prohibits indemnity for cost of defense where there is "negligence or fault (strict liability) on the part of the indemnitee," and the LOAIA does not apply where the indemnitee is not negligent or at fault, 504 So.2d 833, 839, (La. 4/6/87); see also e.g., *Ladner v. Ochsner Baptists Med. Ctr., LLC*, 2024 WL 5054503, at *12 (La. App. 4 Cir. 12/10/24) ("This Court has opined that the [Act] 'substantially mirrors' Louisiana Revised Statute 9:2780, the Louisiana Oilfield Anti-Indemnity Act") (quoting *2700 Bohn Motor, LLC v. F.H. Myers Constr. Corp.* 338 So.3d 500, 507 (La.App. 4 Cir. 4/20/22). An agreement providing for cost of defense in the event of a meritless suit against the indemnitee is outside the scope of the LOAIA. The *Meloy* court

concluded that whether or not an indemnitee is free from fault and thus outside the scope of the LOAIA can only be determined after a trial on the merits, and if it is established that the indemnitee is not at fault or negligent, LOAIA does not prohibit indemnification for costs of defense. 504 So.2d 839.

Here, under the term of the Agreement, Boyd argues that the defense and indemnity provisions explicitly establish Schindler's broad duties to purchase insurance and defend and indemnify it in any lawsuit arising out of the elevator services Schindler was performing under the Agreement, except for claims ultimately found to arise from Delta Downs' own negligence.

Delta Downs points out that the Louisiana Fourth Circuit recently addressed the purpose and limitations of the Act, by drawing a parallel to the LOAIA:

> The Louisiana Supreme Court has held "that such [defense and indemnity] agreements are voided only to the extent that they purport to require indemnification and/or defense where there is negligence or fault on the part of the indemnitee; otherwise, they are enforceable just as any other legal covenant."

*Ladner*, 2024 WL 5054503, at *3 (quoting *Fontenot v. Chevron U.S.A. Inc.*, 676 So.2d 557, 563 (La. 7/2/96) (citing *Meloy*, 504 So.2d at 838).

The Court finds that because Boyd does not seek defense or indemnity for its own negligence, the Agreement's defense and indemnity provisions do not run afoul of the Act, and therefore Boyd is entitled to recover its costs and attorney fees incurred in this matter.

## **CONCLUSION**

For the reasons explained herein, the Court will deny the Motion for Summary Judgment (Doc. 71) filed by Schindler.

**THUS DONE AND SIGNED** in Chambers on this 31st day of January, 2025.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**